```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON

ERVIN GIBSON and
DIXIE GIBSON,
individually and on behalf
of their children, and
GORDON RENEAU and
ERVIN RENEAU and
GARY RENEAU and
REBECCA GIBSON and
BRENDA GIBSON and
ELLEN FACEMIER,
individually and on behalf
of all her infant children, and
EUGENE FACEMIER and
ROBERT LEE FACEMIER and
ZURR E. DEAL,
individually and on behalf
of his infant child, and
PHYLLIS DEAL and
MARGARET STONE,
individually and on behalf
of her infant child, and
KIM CREW,
individually and on behalf
of a plaintiff class of all
others similarly situated, and
JOSEPH A. GLEICHAUF and
KATRINA GLEICHAUF JEFFERSON,

        Plaintiffs

v.                                    Civil Action No. 2:78-2375

DOROTHY ALLEN,
Assistant Commissioner for Social Services, and
ROSELLA ARCHER,
Director of Protective Services for
the West Virginia Department of Welfare, and
JOHN E. BURDETTE, II and
JOHN BURDETTE,
Area Administrator, Area 17, and
SHARON PATERNO
Head of the Division of Protective Services,
Kanawha County office of the
West Virginia Department of Welfare, and
```

```
MARK HUDNALL,
Social Worker, West Virginia Department of Welfare, and
PATRICIA MOORE,
Social Worker working under contract from the
West Virginia Department of Welfare, and
ELMER D. STRICKER,
individually and on behalf of all Circuit Judges
in the State of West Virginia, and
RONALD K. BISCHOFF,
individually and on behalf of a class of all
Prosecuting Attorneys in the State of West Virginia, and
PAUL GIROD,
Area Administrator, Area 19, and
STEVEN FRAME,
Protective Services Supervisor of Nicholas County, and
KATHY KELLY,
Social Worker, West Virginia Department of Welfare, and
DUANNE DRENNEN and
WILLIAM SLEMICK,
Kanawha County Deputy Sheriffs, and
LEON H. GINSBERG,
Commissioner, West Virginia Department of Welfare,
His Successor, and
GRETCHEN LEWIS and
LIZ RHODES,
SSW II, and
JOYCE MCCORMICK,
SSW IV,
Cabell County Social Service Department,

          Defendants.
```

## MEMORANDUM OPINION AND ORDER

Pending is movant Amanda Underwood's "MOTION AND PETITION FOR CONTEMPT AND EQUITABLE, LEGAL, AND FURTHER RELIEF UNDER THE PRIOR ORDERS OF THIS COURT ON BEHALF OF THE CLASS MEMBER AMANDA UNDERWOOD; AND TO ENFORCE THE SAID ORDERS, DECREES OF THIS COURT AND FOR VINDICATION OF THE POWER OF THIS COURT AND

**THE RIGHTS AND LIBERTY INTERESTS OF PETITIONER; AND PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES PURSUANT TO RULE 57 AND 65 OF FRCP, AND PER 28 USC 2201-2, 1343 ET SEQ., 1331, 1983 AGAINST THE CLASS DEFENDANTS, OR THEIR SUCCESSORS ABOVE"** ("motion for an order to show cause") filed March 3, 2011.

I.

A.  Background Concerning This 1978 Class Action

On October 12, 1978, plaintiffs instituted this action alleging the deprivation of rights guaranteed to them by the First, Fourth, Fifth, Ninth, and Fourteenth Amendments. They challenged a number of practices and procedures then in use by the West Virginia Department of Welfare, now known as the West Virginia Department of Health and Human Resources ("WVDHHR"), and others respecting the emergency removal of children from their parents' homes.

On January 8, 1979, the court certified a class consisting of:

> All children and their parents and legal guardians who are residents of the State of West Virginia who are now or will in the future be the subject of abuse or neglect proceedings in which the State of West Virginia through any of these defendants or their successors

>    seeks to terminate or otherwise affect custodial rights
>    to the children.

<u>Gibson v. Ginsberg</u>, No. 78-2375, slip op. at 2 (S.D. W. Va. Jan. 15, 1979).  On June 8, 1984, the court entered a 34-page Amended Consent Decree specifying the relief agreed upon by the parties.[1]

Only two significant events have occurred in the case over the 27 years that have elapsed following entry of the Amended Consent Decree, the most recent of which occurring 15 years ago.  First, on June 28, 1989, the court memorialized the parties' agreement to resolve certain issues post-dating the Amended Consent Decree.  Second, on February 21, 1996, Judith A. Gleichauf, Joseph A. Gleichauf, and Katrina Gleichauf Jefferson sought an order of contempt and damages as putative class members.  Their request arose out of the removal of Katrina Gleichauf Jefferson from her parents' home in a state court proceeding Katrina initiated years' earlier during her teenage years.[2]  The Gleichaufs alleged that certain orders entered by the state circuit court during those proceedings violated the

---

[1] The Amended Consent Decree superseded an earlier decree consented to by the parties and approved by the Court on September 28, 1981.

[2] The proceeding that resulted in Katrina's removal commenced with a petition initiated by her next friend, Julie Larson. Katrina alleged that conditions in her mother's home warranted removal.  She sought that relief, along with a placement in the home of Ms. Larson.

Amended Consent Decree.  The court declined to reopen the case, concluding, inter alia, that inasmuch as Katrina initiated the state court removal proceeding, as opposed to the defendants or their successors, the Gleichaufs were not included within the class definition.  See Gibson v. Ginsberg, 989 F. Supp. 772, 774 (S.D. W. Va. 1996)("Inasmuch as the custody proceedings complained of by the Gleichaufs were not initiated by the State and were not governed by the procedures for abuse and neglect at issue in this action, the Gleichaufs are not members of the class protected by the orders entered in this action.").

B.   Background Concerning the Movant's Circumstances

Movant resides in Berkeley County.  She is the mother of two young children, Caydence H. and Chase H.[3]  Movant asserts that she and her children are members of the class set forth above.  She contends that the State of West Virginia is seeking to unlawfully interfere with her custodial rights in the Circuit Court of Berkeley County in an ongoing abuse and neglect proceeding styled In the Interest of Mackenzie H, Nos. 09-JA-10, 09-JA-37 and 09-JA-38.

---

[3] It appears that at some point in 2010 the children were ages seven months and two years old respectively.

5

On July 10, 2009, as a part of those proceedings, movant's children were removed from her custody by the WVDHHR. There was no pre-taking notice. On July 13, 2009, however, the Circuit Court of Berkeley County granted emergency temporary custody to the WVDHHR. The Amended Order of Temporary Custody, which appears to name movant, the two children, and others, states <u>inter</u> <u>alia</u>, as follows:

> The Court . . . finds that the contents of the Petition herein allege that said abuse and/or neglect constitutes substantial and imminent danger to the health and welfare of the children and remaining in the home is contrary to the children's welfare and that all reasonable efforts have been made to keep these children in the home but there is no reasonable available alternative other than removal of the children from the parents' custody; and it further appearing to the Court that there will continue to be substantial danger to the health and welfare of the children unless the child is placed in the temporary custody of the . . . [DHHR] during the pendency of these proceedings . . . . [I]t is ADJUDGED AND ORDERED that the care, custody and control of [the children] . . . is hereby awarded to the . . . [WVDHHR] . . . pending preliminary hearing in this matter.

(Defs.' Resp. and Mot. to Dism., Ex. D at 1-2).

On July 20, 2009, a preliminary hearing was held. A guardian ad litem was appointed and appeared in order to protect the interests of the children. The circuit court made no findings respecting imminent danger to the children at that time. Instead, with the parties' assent, the circuit court restored

custody to movant under a safety plan to which she agreed and with which she claims to have complied.  The circuit court did not explicitly authorize the WVDHHR to later take custody of the children anew absent a further hearing respecting imminent danger.

One week later, on July 27, 2009, however, a WVDHHR social worker, Mary Carper, directed movant to bring her children to the Berkeley County WVDHHR office.  Ms. Carper took the children into custody at that time for, according to movant, reasons unknown.  Movant asserts that there was no basis for the taking.  She notes the absence of either a pre-taking notice or an order transferring custody to the WVDHHR.  She further asserts that the WVDHHR did not set the matter for a hearing as required by law.  She contends generally that the July 27, 2009, removal was done involuntarily and without judicial process or other procedural safeguards.

DHHR ultimately placed the children with a distant relative of the children's father.  Except for brief visits, movant asserts that she has not seen them since July 27, 2009.  Movant suggests that the relative is pursuing adoption.

On November 6, 2010, the circuit court entered an order terminating movant's parental rights.  The ruling was based upon

7

a request to that effect by the WVDHHR and the guardian ad litem. The order was entered following a hearing attended by movant and her counsel, DHHR and its counsel and agency representatives, and the guardian ad litem. The hearing was "held over several days: May 13, 2010, July 1, 2010, and August 2, 18, 30, and 31, 2010." (Defs.' Resp. and Mot. to Dism., Ex. E at 1). The order includes extensive findings of fact:

1. Movant failed to assure the children were kept current in their immunizations;

2. The circuit court noted the concerns of the WVDHHR and the guardian ad litem respecting possible controlled substance abuse by movant, for which the court directed her to submit to hair follicle testing. Movant failed to appear as directed for the examination but later submitted follicles which tested negative.

3. She was directed by the circuit court during a February 2010 hearing to report to the probation department for controlled substance testing but failed to do so. Tests performed on other occasions reflected negative results but movant did not appear for multiple other tests at various times;

4. On September 30, 2009, movant apparently agreed to and commenced an improvement period. The improvement period plan included requirements for (a) a parenting assessment, (b) participation in parenting education, (c) a psychological evaluation, (d) obtaining and maintaining stable housing and employment, (e) reporting all changes in residence, (f) seeking approval for roommates, and (g) completing a substance abuse evaluation, attending daily controlled substance screening, and participating in five Narcotics Anonymous and Alcoholics Anonymous ("NA/AA") meetings per week;

5. Movant admitted that she failed to successfully complete her improvement period;

6.  She did not complete her substance abuse evaluation;

7.  She started, but failed to complete, a parenting education program;

8.  She failed to secure and maintain stable housing.  At various times she cohabited with two other occupants in a trailer, stayed with her parents until leaving after an argument ensued, spent several nights in a motel, and lived with a new boyfriend in his parents' home;

9.  She failed to participate in visitation with her children "including failing to visit during long stretches of time" (Id. at 6);

10. She canceled four visitations between February and March 2010 and other visitations as well, having seen the children only once between July 13, 2010, and the November 12, 2010, order of the circuit court; and

11. She failed to attend the required NA/AA meetings.

(Id. passim).

Based upon these findings of fact, the circuit court permanently terminated movant's parental rights, concluding as follows:

> That this Court seriously questions whether . . . [movant] can adequately parent these two small children given both her inability to follow through with the terms of her improvement period and her inability to adequately provide for herself
>
> That throughout this case, . . . [movant] has demonstrated a chronic inability to follow up on any service designed to diminish the conditions of neglect.
>
> That pursuant to W.Va. Code § 49-6-12, . . . [movant] failed to demonstrate by clear and convincing evidence that she successfully completed her improvement period.

9

> That . . . [movant] has had over a year to work this case, and she has demonstrated an inadequate capacity to solve the problems of neglect on her own or with help.

(Id. at 11). The circuit court nevertheless continued movant's parental responsibilities in full force and effect, including the obligation to pay child support. She was granted visitation rights, "in the discretion of the care-giver and consistent with the . . . best interest[s of the children]." (Id. at 12).

In her reply brief, movant asserts that she "timely filed a Motion for Reconsideration of the Termination of her parental rights, [but that] the circuit court has failed to rule on the same while the illegal retention of her children by the . . . [WVDHHR] continues and, most importantly, the . . . [WVDHHR] intends to or has consented to the adoption of the said children." (Pl.'s Reply at 1).

On March 3, 2011, movant filed the instant motion for an order to show cause. She contends that her allegations give rise to claims under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments, along with the West Virginia Constitution, West Virginia Code chapter 49, article 6, and the Amended Consent Decree. She asserts that WVDHHR "has a pattern o[r] practice or custom of" retaking "custody of children . . . in Abuse and

10

Neglect cases after they have been returned to the custody of parents without setting the removal for a hearing or obtaining a court order finding imminent danger within ten (days) [sic] of the removal." (Id. ¶ 23).

Count One petitions for a contempt finding, asserting as follows:

> 37. Defendants violated Paragraph 1 of the Injunctive Relief of th[e Amended Consent Decree]. . . to-wit: the WVDHHR took and retained the custody of Caydence H. and Chase H. without the consent of . . . [movant] on account of alleged abuse or neglect without prior judicial authorization and in the absence of imminent danger to the physical well being of the children.
>
> 38. Defendants violated Paragraph 2 of the Injunctive Relief of th[e Amended Consent Decree]. . . by taking and retaining custody of Caydence H. and Chase H. without the consent of . . . [movant] after a petition had been presented to the court and the court had determined there was no imminent danger and had returned the children to [her] . . . and the Defendant's [sic] did not obtain a subsequent order of the court granting them custody of said children.
>
> 39. Defendants violated Paragraph 3 of the Injunctive Relief of th[e Amended Consent Decree]. . . by contacting . . . [movant] on July 27,2009 and requiring her to bring the said children to the office of the WVDHHR without the consent of  . . . [movant's] counselor or a court order and without filing a new report of suspected abuse or neglect indicating an emergency situation and a reasonable attempt to contact counsel.

(Id. ¶¶ 37-39).

Count Two seeks a declaratory judgment that, *inter alia*, the WVDHHR's removal of Caydence H. and Chase H. violated movant's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights, along with unnamed portions of the West Virginia Constitution.  Count Three seeks an injunction, *inter alia*, prohibiting WVDHHR from retaining custody of the children.  Count Four is duplicative in all respects of Count One.  Count Five alleges the negligent and intentional infliction of emotional distress.

The WVDHHR moves to dismiss.  First, it asserts that movant and her children do not qualify as class members inasmuch as they, unlike the class certified in 1979, received adequate procedural safeguards, including counsel, and suitable judicial process.  Second, it asserts that movant seeks relief barred by the doctrine espoused in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (collectively the "*Rooker*-*Feldman* doctrine").

II.

The Amended Consent Decree represents a judicial act. It is not a contract.  That observation is significant from a

jurisdictional perspective. See Thompson v. U.S. Dep't of Housing & Urban Dev., 404 F.3d 821, 830 (4th Cir. 2005)("A court's ability to modify a consent decree or other injunction springs from the court's inherent equitable power over its own judgments.") (citations omitted). The mere passage of time does not interfere with the court's enforcement jurisdiction in this setting. See System Fed'n No. 91 v. Wright, 364 U.S. 642, 647 (1961) (explaining that injunctions "often require . . . continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief"); Brewster v. Dukakis, 3 F.3d 488, 491 (1st Cir. 1993) ("[S]o long as the injunction endures, the district court's enforcement authority can always be 'reawakened.'"); In re Pearson, 990 F.2d 653, 657 (1st Cir. 1993) ("[W]hen ... an injunction entered pursuant to a consent decree has ongoing effects, the issuing court retains authority to enforce it."); Hook v. Arizona Dep't of Corr., 972 F.2d 1012, 1014 (9th Cir. 1992) (involving a 16 year old consent decree and court of appeals noting: "A district court retains jurisdiction to enforce its judgments, including consent decrees. Because the inmates allege a violation of the consent decree, the district court had jurisdiction." (citation omitted)).

At the same time, some principles governing consent decrees overlap with the law of contracts. For example, in <u>Thompson</u> the court of appeals observed as follows:

> Issues of interpretation and enforcement of a consent decree typically are subject to traditional rules of contract interpretation, and the district court's authority is thus constrained by the language of the decree.

<u>Thompson</u>, 404 F.3d 821, 832 (4th Cir. 2005); <u>Johnson v. Robinson</u>, 987 F.2d 1043, 1046 (4th Cir. 1993)(noting "consent decrees are to be interpreted as contracts."); 46 Am. Jur. 2d Judgments § 195 (2d ed. elec. 2011) ("Judgments by consent are construed and interpreted as contracts to which the rules governing contract interpretation or construction apply.") (footnote omitted).

Some of the primary rules governing contract interpretation are summarized in the aforementioned legal encyclopedia:

> The explicit language of the judgment is to be given <u>great weight</u>; deference is to be paid to the plain meaning of the language of the judgment in the normal usage of the terms selected.
>
> A consent decree must be construed as it is written and <u>not as it might have been written</u> . . . .
>
> When interpreting a consent decree, words must be read in context, <u>each of its provisions being interpreted together with its other provisions</u>. Absent ambiguity in the terms of the consent judgment, the intent of the parties must be ascertained <u>solely from</u>

**the instrument itself** and extrinsic evidence will not be admitted.

**Id.** (emphasis added); see also Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 574 (1984)("It is to be recalled that the 'scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it' or by what 'might have been written had the plaintiff established his factual claims and legal theories in litigation.'") (quoting United States v. Armour & Co., 402 U.S. 673, 682 (1971)); Anderson v. Stephens, 875 F.2d 76, 80 (4th Cir. 1989) (same); Willie M. v. Hunt, 657 F.2d 55, 60 (4th Cir. 1981)("From all this we take two cardinal principles for interpreting the consent judgment here in issue. First, that its meaning is properly to be sought within the confines of the judicially approved documents expressing the parties' consent. Second, that its meaning is to be sought in what is there expressed and not in the way it might have been written had the plaintiffs established their full rights in litigation or if it had been written to satisfy the purposes of only one of the parties to it.").

As noted, the class definition found in the Amended Consent Decree reads as follows:

> All children and their parents and legal guardians who

> <u>are residents</u> of the State of West Virginia who <u>are now or will in the future be</u> the subject of abuse or neglect proceedings in which the State of West Virginia through any of these defendants or their successors seeks to terminate or otherwise affect custodial rights to the children.

<u>Gibson v. Ginsberg</u>, No. 78-2375, slip op. at 2 (S.D. W. Va. Jan. 15, 1979). The language first underscored above, namely, the residency requirement, reflects a present sense, measured from the time of the certification of the class in 1979. Coverage is thus confined, <u>inter alia</u>, to all parents and their children "who are residents" in 1979. This reading is confirmed by the language next underscored, namely, the proceedings requirement, which further explicates the class definition covers not only those "who are now . . . the subject of abuse or neglect proceedings" but additionally those who "will in the future be" so subject.

      Counsel and the court might have chosen to adopt an <u>in futuro</u> construction for both the residency and proceedings requirements. They did not do so. To now adopt an <u>in futuro</u> construction for the residency requirement would amount to a material modification not contemplated by the court and the parties at the time, nor requested by movant.

16

Both children are under five years of age. Movant was not their parent, and neither she nor the children were apparently residents of the state, on either the January 8, 1979, class certification date or the June 8, 1984, Amended Consent Decree date. Neither the movant nor her children are thus included within the class definition found in the Amended Consent Decree. They are hence prohibited from seeking relief for any contumacious conduct committed by those falling subject to its terms.

The court, accordingly, declines to reopen this case. It is ORDERED that the motion for an order to show cause be, and it hereby is, denied. The denial is without prejudice to movant's pursuit of any other available remedies.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: June 3, 2011

John T. Copenhaver, Jr.
United States District Judge